UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

_____
                                            :
**SECURITIES AND EXCHANGE COMMISSION,**     :
                                            :
      **Plaintiff,**               :
                                            :
      v.                           :   Civil No._____
                                            :
**STEVE H. KARROUM**                        :
a/k/a **MUSTAPHA KARROUM**, and             :   **COMPLAINT**
                                            :
**FX & BEYOND CORPORATION,**                :
                                            :
      **Defendants,**              :
                                            :
      and                          :
                                            :
**SAHAR KARROUM**                           :
a/k/a **Sahar Mohammad Jamil Al Bouhairy**  :
                                            :
      **Relief Defendant.**        :
_____:

Plaintiff Securities and Exchange Commission ("Commission"), for its complaint against Defendants Steve H. Karroum a/k/a Mustapha Karroum ("Karroum") and FX & Beyond Corporation ("FX & Beyond") and Relief Defendant Sahar Karroum a/k/a Sahar Mohammad Jamil Al Bouhairy ("Sahar Karroum"), alleges as follows:

**SUMMARY**

1.      Since at least December 2007 and continuing through about May 2014 (the "Relevant Period"), Karroum, acting individually and as an agent for his company FX & Beyond, solicited approximately $4 million from at least 18 investors in the U.S. Karroum, a computer programmer, represented that he had created a computerized foreign exchange ("forex") trading platform that conducted forex trades without loss. He claimed his trading could

generate 80-100% returns and offered investors returns of up to 30%, with guaranteed profits and return of principal. Karroum provided promissory notes to his investors from FX & Beyond in exchange for their investments. Defendants, however, did not register any of their investment offerings with the Commission as they were legally required to.

2. While Karroum represented that investor funds would be used for forex trading and be kept "safe", Karroum – without telling his investors – stopped sending their money to his forex broker for trading after December 2010. Instead, he deposited investor funds in FX & Beyond's bank account, where Karroum used the money for undisclosed purposes, including making Ponzi-like payments to investors, paying unrelated business expenses, and misappropriating funds for Karroum's and his wife's personal use or benefit. For example, in April 2013, Karroum used investor money to make purchases at, among other places, Victoria's Secret, Gymboree, Papaya Clothing and the Disney Store. In May 2014, he made ATM withdrawals of investor money.

3. Karroum made additional misrepresentations to his investors. In 2013 and 2014, Karroum falsely represented to investors that he was planning new investment "cycles" in an effort to induce additional investments. But Karroum had not invested any funds in forex trading since 2010. When, as a result of these solicitations, he secured additional investments, he misappropriated his investors' money and used it to pay himself or other investors. Karroum also gave investors account statements purporting to show their "profits" from Karroum's forex trading. However, certain of those account statements were materially false or misleading because the shown payments came, not from trading profits, but directly from deposits by other investors.

4.     Karroum also failed to tell his investors all the material facts about what he was doing with their money.  For example, he failed to disclose his inappropriate uses of investor funds, as described above.  He also failed, beginning in late 2013 until November 2014, to disclose huge trading losses to his investors.  Karroum's trading strategy created large negative open positions, which put investor funds at significant risk.  When Karroum started closing out these large negative open positions in late 2013 and in 2014, he began realizing significant trading losses.  However, Karroum did not disclose these losses and continued to solicit funds, obtaining additional investments in the spring of 2014.  By the time Karroum disclosed his losses, in late 2014, his accounts were all but liquidated, and at least 14 investors lost a total of approximately $1.7 million of principal.

5.     By virtue of their conduct, the Defendants have engaged and unless enjoined will continue to engage in violations of Sections 17(a) and (5) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77e(a) and 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## JURISDICTION AND VENUE

6.     The Commission brings this action, and this Court has jurisdiction over this action, pursuant to authority conferred by Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)] and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

7.     This Court has personal jurisdiction over the Defendants and venue is proper in this District pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because each Defendant engaged in transactions, acts,

practices, and courses of business constituting the violations alleged herein within this District and the Defendants can be found and do business in this District. During the Relevant Period, Karroum resided in Vienna, Virginia, and he and his alter ego FX & Beyond conducted the acts, practices, and courses of business alleged herein within the Eastern District of Virginia.

8. The Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, and the means and instruments of transportation and communication in interstate commerce, in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

## DEFENDANTS

9. **Steve H. Karroum, a/k/a Mustapha Karroum**, age 54, is an American citizen who was born in Lebanon and is believed to be currently living in Tripoli, Lebanon. He owns a residence in Vienna, Virginia. During the period, he was the President of FX & Beyond. He has never been registered with the Commission in any capacity.

10. During the Relevant Period, **FX & Beyond Corporation** was incorporated in Virginia with its principal place of business in Vienna, Virginia. Its corporate status was terminated on February 29, 2016 for failure to pay annual fees and file annual reports. It has never been registered with the Commission in any capacity and is the alter ego of Karroum. FX and Beyond did not maintain corporate formalities, nor did it maintain proper corporate records. Other than Karroum, it had one other named officer, who was a nominee with no actual involvement with the company. FX & Beyond was at all times controlled and dominated by Karroum. In addition, Karroum used funds from FX & Beyond's bank account for his own use.

**RELIEF DEFENDANT**

11.     **Sahar Karroum a/k/a Sahar Mohammad Jamil Al Bouhairy**, approximately 53, is Karroum's wife.  She is co-owner of Karroum's house in Vienna, Virginia, for which mortgage payments were made, in part, from investor funds.  In May 2014, Karroum transferred to her, by deed of gift, four condominium apartments in Vienna and Falls Church, Virginia.  The mortgage payments and/or condominium fees for these apartments were made, in part, from investor funds.  In addition, investor funds were used to pay some of her credit card bills during the period of the fraud.  The total benefit she received from transfers from FX & Beyond's bank account is at least $335,000.

**FACTS**

12.     During the Relevant Period, Karroum and, through him, FX & Beyond, used the mail and wires to solicit approximately $4 million from at least 18 investors located in Virginia, Michigan, and other states for the purpose of forex trading.  Karroum, a computer programmer, claimed that he had invented a program that conducted forex trading without loss.  He claimed his trading could generate 80-100% returns and offered investors returns of up to 30%, with guaranteed profits and return of principal.  Karroum told investors that their money would be invested in forex trading and kept "safe", and that he would earn his money from the excess profit that his trading achieved.  Karroum gave investors promissory notes from FX & Beyond in exchange for their investments.

13.     Defendants did not register any of their investment offerings with the Commission.

### Defendants' Material Misstatements and Omissions, and Other Deceptive Acts and Practices

14. During the Relevant Period, Defendants made the following misrepresentations of material fact, omissions of material fact and committed the following deceitful acts:

15. Karroum orally told investors, at numerous times during the Relevant Period, that his forex trading provided 80-100% returns. Karroum, however, omitted to disclose trading losses in his accounts. Beginning in late 2013 and throughout 2014, Karroum realized huge trading losses. Karroum's trading strategy had created large negative open positions, which put investor funds at significant risk. In approximately September 2013, his forex broker began charging Karroum "swap fees" for keeping positions open. Karroum had many losing open positions totaling in millions of dollars – some of which had been open for years and which began generating significant fees. Therefore, Karroum started closing out these large negative open positions in late 2013 and in 2014, which resulted in significant trading losses. However, he failed to disclose these losses to investors, while continuing to solicit and obtain additional funds. For example, in April 2014, rather than disclose his losses, he told INVESTOR A that he was merely experiencing "short term difficulties" that delayed his interest payments to investors. This induced the investor to roll over his return and contribute additional principal: in May 2014, INVESTOR A invested an additional $43,000, which Karroum used to pay other investors, pay the premium on his life insurance policy, and make ATM withdrawals.

16. Karroum misused investor funds. Karroum orally represented to investors, at numerous times during the Relevant Period, that their funds would be invested in forex trading and would otherwise be kept "safe". However, of the approximately $4 million he received from U.S. investors, Karroum sent less than half to his forex broker for trading, and after December 2010, Karroum no longer sent *any* investor funds out for trading. Instead, he kept investor

deposits in FX & Beyond's bank account, where he used the money for various purposes which were not disclosed to his investors. Since November 30, 2011, Karroum made over half a million dollars in Ponzi payments (payments to investors derived from money received, at least in part, from other investors). Beginning in January 2013, Karroum began regularly using payments from investor deposits to pay returns to his U.S. investors. In 2014, when he was experiencing large trading losses, he continued using investor funds to pay out money owned to other investors. He never told investors how he reshuffled their money to hide his trading losses.

17. Karroum orally misrepresented to investors, at numerous times during the Relevant Period, that he would earn his compensation through excess profit generated by his forex trading. However, at numerous times during the Relevant Period, Karroum paid himself, not from trading profits, but directly from deposited investor funds. Instead of sending those funds out for forex trading, he simply withdrew investor funds from FX & Beyond's bank account for himself or for his wife's benefit, or used them to pay his or his wife's personal expenses. In April 2013, for example, he used investor money to make purchases at Victoria's Secret, the Disney Store, Gymboree, Papaya Clothing, McDonald's, and Joseph A. Bank. He also used investor deposits to make undisclosed payments to third parties, made ATM withdrawals, and paid expenses that were unrelated to forex trading.

18. Karroum gave certain investors false and misleading account statements from FX & Beyond. These statements showed purported amounts of "profit" or "interest earned" being paid to the investors to make investors believe that their returns were coming from Karroum's forex trading. The statements were materially false or misleading because the payments the investors received came, not from forex trading profits, but from deposits by other investors. For instance, Karroum provided an account statement in the name of FX & Beyond to INVESTOR

7

B, which stated that for the period from April 1, 2013 through September 30, 2013 the investor earned a "profit" of $40,000.  However, bank records show that the $40,000 the investor received came, instead, from deposits by other investors.  Karroum also provided account statements to investors whose money was never invested at all, and who therefore could not have earned any profit:  For example, INVESTOR A received an account statement covering the same time period, showing he made a "profit" of $7,000, but his investment money had never even been sent out for forex trading.

19. Although Karroum stopped sending investor money out for forex trading after 2010, he continued to solicit investors, falsely telling them that he was beginning new investment "cycles" to make them believe their money would be used for forex trading.

   a. For instance, in January 2013 he emailed INVESTOR C, an existing investor to say that he was "opening a new cycle in the spring" and asking if he wanted to make "any changes to your capital".  When INVESTOR C responded in the affirmative, Karroum asked how much the investor was going to invest, "for planning purposes."  INVESTOR C responded that he planned to invest $200,000, which he sent Karroum in March 2013.  Also in January 2013, Karroum emailed INVESTOR A (at that time a prospective investor), saying that he "will be opening a new cycle on March of every year…. You can join at that time."  INVESTOR A, like INVESTOR C, invested in March 2013, contributing $70,000.  Karroum then spent about $80,000 of their combined principal paying returns to other investors and going for a shopping spree at The Disney Store, Victoria's Secret, Gymboree and Papaya Clothing.  None of the investors' funds were sent out for investment.

8

   b.  A year later, in March 2014 Karroum emailed INVESTOR A again, saying that he was "trying to plan the new cycle" and asking if the investor wanted to invest more money. Karroum wrote that "it is important for me to know how much money is coming in, so that I can plan how to put it to work." In May 2014, the investor invested an additional $43,000 with Karroum, who promptly "put it to work" by paying returns to other investors, paying the premium on his life insurance policy, and making personal ATM withdrawals.

  20. In 2014, after Karroum started experiencing significant trading losses, he engaged in lulling activity, telling investors that their payments were being delayed but would be paid imminently. For example, as previously mentioned, in April 2014 he lied to INVESTOR A and induced him to both rollover his semi-annual payout and contribute additional funds, stating that the swap fees were merely "short term business difficulties" that required additional funds to resolve. In July 2014 he emailed another investor, who had invested $600,000 in principal, "your money is very safe, and will be returned to you as per the promissory note no matter what happens." Even as late as November 2014, when his trading account balance was less than $6,000 and the FX & Beyond's bank account was in the red, he was emailing investors saying their money was "safe".

  21. Defendants knew or were reckless in not knowing that each of the statements made in paragraphs 1-20 was materially false or misleading or omitted to state material facts which would make them not materially misleading. Defendants also knowingly or recklessly engaged in the other deceptive acts, practices, and transactions alleged in paragraphs 1-20 to deceive investors in furtherance of his schemes.

22. After being sued for fraud in Virginia state court by an injured investor and after becoming aware of the Commission's investigation in this matter, Karroum continued to solicit investors. In June 2015, Karroum fled to Lebanon and has not returned.

**Allegations Relating to Relief Defendant**

23. At all times during the Relevant Period, relief defendant Sahar Karroum was Karroum's wife. During the Relevant Period, the defendants transferred over $900,000 from FX & Beyond's bank account to Karroum's personal bank account which, by at least April 2014, he had made a joint account with the relief defendant. Some of these funds were funds directly derived from investor deposits; at other times, they were funds derived from his forex trading that was due to the investors. Karroum used at least $335,000 in transferred funds for his wife's benefit, including paying the mortgage and home equity loan on the house that they jointly owned in Virginia. Karroum used some of the transferred funds to pay her credit card bills, and others to pay the mortgage and/or condominium fees on four apartments Karroum owned in Virginia. In May 2014, Karroum transferred these apartments into his wife's name, for no consideration, thus providing her with the benefits of those payments.

24. The relief defendant did not provide any lawful services or products to any defendant or for the benefit of the defendants' investors in return for these funds.

## FIRST CLAIM

### Each Defendant Violated Exchange Act Section 10(b) and Rule 10b-5

25. The Commission realleges and incorporates herein by reference paragraphs 1 through 24 above.

26. Each defendant, directly and indirectly, with scienter, by use of the means or instrumentalities of interstate commerce, or of the mails, employed devices, schemes or artifices to defraud; made untrue statements of material fact or omitted to state material facts necessary in

order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices or courses of business which have been and are operating as a fraud or deceit upon the purchasers or sellers of securities.

27. As a part of and in furtherance of their scheme, Defendants directly and indirectly, prepared, disseminated, or used contracts, account statements, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth in Paragraphs 1 through 20 above.

28. By reason of the foregoing, each defendant has violated and, unless restrained and enjoined, will continue to violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5].

## SECOND CLAIM

### Each Defendant Violated Securities Act Section 17(a)

29. The Commission realleges paragraphs 1 through 28 above.

30. Each defendant, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails: (a) has employed, is employing, or is about to employ devices, schemes or artifices to defraud; (b) has obtained, is obtaining or is about to obtain money or property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) has engaged, is engaged, or is about to engage in transactions, acts, practices and courses of business that operated or would operate as a fraud upon purchasers of securities.

31. By reason of the foregoing, each defendant has violated and, unless restrained and enjoined, will continue to violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

## THIRD CLAIM

### Defendants Violated Section 5 of the Securities Act

32. The Commission realleges paragraphs 1 through 31 above.

33. Defendants, directly or indirectly, through the use of interstate facilities or the mails, sold or offered to sell securities for which no registration statement was in effect or had been filed as to the securities offering.

34. By reason of the foregoing, each defendant violated and, unless restrained and enjoined, will continue to violate Securities Act Section 5 [15 U.S.C. § 77e(a)].

## CLAIM AGAINST RELIEF DEFENDANT

35. The Commission realleges paragraphs 1 through 34 above.

36. Relief defendant Sahar Karroum a/k/a Sahar Mohammad Jamil Al Bouhairy received, directly or indirectly, funds and/or other benefits from the defendants which are the proceeds of unlawful activities alleged in this Complaint and to which the relief defendant has no legitimate claim.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

### I.

Enter judgment in favor of the Commission finding that the Defendants violated the federal securities laws and Commission rules as alleged in this Complaint;

### II.

Permanently enjoin the Defendants from further violations of the federal securities laws and Commission rules alleged against them in this Complaint;

### III.

Order all Defendants and Relief Defendant to disgorge, as the Court may direct, all ill-gotten gains received or benefits in any form derived from the illegal conduct alleged in this Complaint, together with pre-judgment interest thereon;

### IV.

Order all Defendants to pay civil monetary penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

### V.

Grant such other equitable and legal relief as may be appropriate or necessary for the benefit of investors pursuant to Exchange Act Section 21(d)(5) [15 U.S.C. § 78u(d)(5)].

Date:   February 16, 2017                    By:


s/_____
Sarah Hall
VA Bar # 71084
Attorney for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
100 F Street N.E.
Washington, D.C. 20549
Tel:  (202) 551-4784
Fax: (202) 772-9228
Email:  halls@sec.gov

Of Counsel:

Derek Bentsen (*pro hac vice* application forthcoming)
Stephen T. Kaiser (*pro hac vice* application forthcoming)
Timothy N. England